UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KEENA HAYES ROMERO                           CIVIL ACTION NO. 6:13-cv-00243

VERSUS                                        JUDGE HAIK

U.S. COMMISSIONER OF SOCIAL                   MAGISTRATE JUDGE HANNA
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED and that this matter be DISMISSED WITH PREJUDICE.

### BACKGROUND

The claimant, Keena Hayes Romero, was born on September 2, 1965.[1] She was 45 years old when she applied for Social Security disability benefits, she was 46 years old when the hearing was held, and she is 48 years old today. She completed approximately two and a half years of college and two and a half years of vocational-technical training.[2] For twenty-one years, she worked for oilfield service companies

---

[1]  Rec. Doc. 5-1 at 89.

[2]  Rec. Doc. 5-1 at 29.

performing secretarial and bookkeeping functions.[3] Her most recent employment was as the accounts payable manager for Hub City Industries.[4] She worked there for approximately three and a half years[5] and was earning $14.63 per hour[6] when she was laid off on September 9, 2009.[7] After being laid off, she collected unemployment compensation until March 2010.[8] Ms. Romero has not returned to work since September 9, 2009.[9]

The record contains references to an application for a period of disability and disability insurance benefits dated December 14, 2010,[10] but no such application was found in the record. However, the record reflects that, on December 27, 2010, Ms. Romero applied for disability insurance benefits.[11] The application is confusing because it states that she became disabled on September 9, 2009 but was no longer

---

[3] Rec. Doc. 5-1 at 31, 112.

[4] Rec. Doc. 5-1 at 30, 112.

[5] Rec. Doc. 5-1 at 30.

[6] Rec. Doc. 5-1 at 106.

[7] Rec. Doc. 5-1 at 31.

[8] Rec. Doc. 5-1 at 31,

[9] Rec. Doc. 5-1 at 30.

[10] Rec. Doc. 5-1 at 15, 44.

[11] Rec. Doc. 5-1 at 89.

disabled on the date of the application for benefits,[12] her disability having ended in September 2010.[13] This is inconsistent with her continuing claim that she is disabled and entitled to benefits. The undersigned assumes that the application is erroneous and that Ms. Romero continues to seek disability benefits for the entire time period from September 9, 2009 forward.

In her application, Ms. Romero claimed a disability onset date of September 9, 2009,[14] which corresponds to the date on which she was laid off from her last job. In a contemporaneous disability report, she claimed that she was disabled because of type 1 diabetes mellitus and a barely working pancreas.[15]

On February 14, 2011, it was determined that Ms. Romero is not disabled.[16] She requested a hearing,[17] which was held on February 23, 2012 before Administrative Law Judge ("ALJ") Steven C. Graalmann.[18] The ALJ issued an

---

[12]    Rec. Doc. 5-1 at 89.

[13]    Rec. Doc. 5-1 at 89.

[14]    Rec. Doc. 5-1 at 89.

[15]    Rec. Doc. 5-1 at 105.

[16]    Rec. Doc. 5-1 at 44.

[17]    Rec. Doc. 5-1 at 53.

[18]    A transcript of the hearing is found in the record at Rec. Doc. 5-1 at 25-43.

unfavorable ruling on March 9, 2012.[19] Ms. Romero requested review by the Appeals Council,[20] but the request was denied.[21] Therefore, the ALJ's ruling is the Commissioner's final decision. In January 2013, Ms. Romero instituted this lawsuit, seeking judicial review of the Commissioner's adverse decision.[22] Ms. Romero now argues that the Commissioner erred in failing to find that she is disabled because her diabetes prevents her from performing sustained work activities.

## ASSIGNMENT OF ERRORS

Ms. Romero did not clearly assign errors and then argue the merits of the assigned errors. However, reading her brief as liberally as possible, the undersigned interprets her arguments as presenting the following contentions: (1) that the Commissioner erred in concluding that she can consistently perform work on an ongoing and continuing basis; (2) that the Commissioner erred in finding her not disabled when there is no medical evidence contradicting her treatment and diagnosis; (3) that the ALJ erred in discounting her credibility; and (4) that the ALJ improperly considered the vocational expert's hearing testimony.

---

[19] Rec. Doc. 5-1 at 15-21.

[20] Rec. Doc. 5-1 at 15.

[21] Rec. Doc. 5-1 at 4.

[22] Rec. Doc. 1.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[23] If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[24] Substantial evidence is more than a mere scintilla and less than a preponderance.[25] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[26] Finding substantial evidence requires scrutiny of the entire record as a whole.[27] In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[28]

---

[23] See, e.g., *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[24] 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995), citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

[25] See, e.g., *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

[26] *Boyd v. Apfel,* 239 F.3d at 704; *Hames v. Heckler*, 707 F.2d at 343-44.

[27] *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[28] *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[29] Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[30] Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.[31]

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled. At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled. At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors. If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four.

---

[29] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[30] 42 U.S.C. § 423(d)(1)(A).

[31] 20 C.F.R. § 404.1572.

If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[32]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[33] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[34] The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[35]

The claimant bears the burden of proof on the first four steps.[36] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can

---

[32] See, e.g., *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f). See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[33] 20 C.F.R. § 404.1520(a)(4).

[34] 20 C.F.R. § 404.1545(a)(1).

[35] 20 C.F.R. § 404.1520(e).

[36] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

perform other substantial work in the national economy.[37] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[38] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[39] If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[40]

In this case, the Commissioner found, at step one, that Ms. Romero has not engaged in substantial gainful activity since her alleged disability onset date of September 9, 2009.[41] That finding is supported by evidence in the record.

At step two, the ALJ found that Ms. Romero has the following severe impairment: diabetes mellitus.[42] This finding is also supported by evidence in the record. Ms. Romero was diagnosed with uncontrolled diabetes in April 2010.[43] She

---

[37] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[38] *Fraga v. Bowen*, 810 F.2d at 1304.

[39] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[40] *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

[41] Rec. Doc. 5-1 at 17.

[42] Rec. Doc. 5-1 at 17.

[43] Rec. Doc. 5-1 at 164.

immediately began treating the illness and her blood glucose numbers went down significantly.[44] In September 2010, she began treating with an endocrinologist, who initially diagnosed her with type 2 diabetes[45] but changed his diagnosis to type 1 diabetes based on lab results.[46] He began treating her with insulin,[47] and in November 2011, Ms. Romero began using an insulin pump.[48]

At step three, the ALJ found that Ms. Romero does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[49] Ms. Romero does not argue that this finding was incorrect.

At the next step of the process, the ALJ found that Ms. Romero retains the residual functional capacity to perform a full range of light work.[50] At step four, the ALJ found that Ms. Romero is capable of performing her last relevant work.[51] Therefore, the ALJ's finding of nondisability was made at step four, and he did not

---

[44] Rec. Doc. 5-1 at 164, 168, 198.

[45] Rec. Doc. 5-1 at 176.

[46] Rec. Doc. 5-1 at 175.

[47] Rec. Doc. 5-1 at 175.

[48] Rec. Doc. 5-1 at 182.

[49] Rec. Doc. 9-1 at 18.

[50] Rec. Doc. 5-1 at 18.

[51] Rec. Doc. 5-1 at 20.

progress to step five. The ALJ then concluded that Ms. Romero was not disabled from September 9, 2009 through the date of the decision.[52] These findings are also supported by substantial evidence in the record.

## DISCUSSION

Ms. Romero's first assignment of error is based on the Commissioner's implicit conclusion that she is capable of consistently performing light work on an ongoing and continuing basis. The record contains medical records from Ms. Romero's treating physicians: her primary care physician, Dr. Milton Jolivette, and her endocrinologist, Dr. Todd Baquet. The earliest such record is dated October 19, 2009,[53] more than a month after she stopped working, and it refers to treatment for sinusitis, a condition unrelated to her alleged disability. She was diagnosed with diabetes in April 2010,[54] a full seven months after she stopped working. It was not until September 24, 2010,[55] more than a year after she stopped working, that her diabetes was identified as being type 1. Therefore, there is no evidence that she had

---

[52] Rec. Doc. 5-1 at 21.

[53] Rec. Doc. 5-1 at 166.

[54] Rec. Doc. 5-1 at 164.

[55] Rec. Doc. 5-1 at 175.

diabetes at the time that she lost her employment or that diabetes was either the cause of her losing her job or a reason why she cannot return to the work force.

Immediately following her diagnosis with type 1 diabetes, Ms. Romero began insulin injections,[56] and in November 2010, she began using an insulin pump.[57]

Both Ms. Romero's counsel and the ALJ seem to be laboring under the misapprehension that her diabetes is so severe that it caused her to lose almost one hundred pounds.[58] Although the record indicates that she lost weight due to the onset of diabetes, the record does not reflect such a drastic weight loss. Instead, it shows that she weighed between a low of 96 pounds on September 24, 2010[59] and a high of 127 pounds on August 9, 2012.[60] At the hearing, she did not testify that she lost ninety-four pounds; she testified that she had lost "down to 94 pounds."[61] On the day of the hearing, she weighed 118.[62] Her doctor noted that her weight loss was

---

[56] Rec. Doc. 5-1 at 37.

[57] Rec. Doc. 5-1 at 182.

[58] Rec. Doc. 7 at 2; Rec. Doc. 5-1 at 20, 149.

[59] Rec. Doc. 5-1 at 170.

[60] Rec. Doc. 5-1 at 215

[61] Rec. Doc. 5-1 at 29.

[62] Rec. Doc. 5-1 at 28.

explained by the development of uncontrolled diabetes.[63] However, there is no evidence that her weight loss was as severe as that mentioned in the ALJ's ruling or in Ms. Romero's briefing.

The medical records contain no functionality evaluation by Ms. Romero's doctors and no diagnosis of diabetes-related retinopathy or neuropathy. Although Ms. Romero complained at the hearing about her arms and hands going numb, fatigue, dry eyes, headaches, an inability to grasp anything or to lift more than ten pounds, an inability to stand or sit for long periods of time, a fast heart rate, poor sleep, depression, anxiety, agitation, loss of focus and concentration,[64] none of those symptoms are correlated by her doctors to her diabetes. In the medical records, some of these symptoms are related to her attempt to stop smoking.[65] Some of them seem to suggest mental health issues, and her doctor noted that she experienced "significant emotional ups and downs. . . related to a recent divorce, and to ongoing difficulties [including] . . . lost her job, and she is still supporting a young child."[66] Ms. Romero testified at the hearing that she has received no mental health treatment since she

---

[63]     Rec. Doc. 5-1 at 164.

[64]     Rec. Doc. 5-1 at 32-33, 35-36.

[65]     Rec. Doc. 5-1 at 190, 192, 197.

[66]     Rec. Doc. 5-1 at 162.

stopped working.[67] She also described the symptoms that she experiences if her blood sugar gets too high or too low.[68]

Ms. Romero reported numbness in her arm to Dr. Baquet on June 7, 2011,[69] but on December 14, 2011, he noted she was doing "Awesome!!"[70] She reported muscle weakness and cramps to Dr. Baquet on March 28, 2012,[71] and she reported numbness in her shoulders, knees, and hands as well as pain in her feet upon awakening on June 7, 2012.[72] There is no physician's note linking these symptoms to her diabetes, and no treatment directed toward these complaints is set forth in the medical records.

Significantly, the record contains no opinion from any doctor explaining how Ms. Romero's diabetes affects her ability to function in the workplace. The lack of limitations imposed by a physician evaluating the claimant's condition supports the ALJ's decision.[73]

---

[67] Rec. Doc. 5-1 at 35.

[68] Rec. Doc. 5-1 at 38.

[69] Rec. Doc. 5-1 at 198

[70] Rec. Doc. 5-1 at 196.

[71] Rec. Doc. 5-1 at 207.

[72] Rec. Doc. 5-1 at 209.

[73] See *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).

Ms. Romero appears to be arguing that the ALJ erred in failing to make a separate finding that she has the ability to maintain employment on a sustained basis. Such an affirmative finding is required only when an individual's ailment "waxes and wanes in its manifestation of disabling symptoms."[74] Absent such a showing, the ALJ's assessment of a claimant's residual functional capacity subsumes the determination that the claimant can maintain employment.[75] Here, the record does not contain substantial evidence that her overall impairment or her ability to perform work tasks waxes and wanes. Therefore, the ALJ was not required to make a separate finding as to the sustainability of employment.

There is nothing in the record refuting the Commissioner's implicit conclusion that Ms. Romero is capable of consistently performing light work on an ongoing and continuing basis. Therefore, her first assignment of error lacks merit.

Ms. Romero's second argument is that the Commissioner erred in finding her not disabled when there is no medical evidence contradicting her treatment and diagnosis. A finding of disability is based on a diagnosis only when the claimant's impairment meets a listing for a presumptive disability. When, as here, the claimant's impairment does not satisfy a listing – and Ms. Romero does not argue that her

---

[74] *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003).

[75] *Perez v. Barnhart*, 415 F.3d at 465-66.

diabetes satisfies a listing – a finding of disability is based upon functional impairment. "The mere presence of some impairment is not disabling per se. Plaintiff must show that she was so functionally impaired by her [claimed condition or medical diagnosis] that she was precluded from engaging in any substantial gainful activity."[76] Accordingly, the mere fact that Ms. Romero has been diagnosed with and treated for diabetes does not mean that she is disabled. The Commissioner did not err in failing to find her disabled because there is no evidence contradicting her treatment or diagnosis.

Furthermore, the evidence in the record indicates that the treatment being provided by Ms. Romero's physicians is effective in controlling her diabetes. For example, it was noted in December 2010 that Ms. Romero was "doing well on pump therapy"[77] and "feeling better on the pump."[78] "If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."[79] This assignment of error lacks merit.

---

[76] *Hames v. Heckler*, 707 F.2d at 165.

[77] Rec. Doc. 5-1 at 173.

[78] Rec. Doc. 5-1 at 168.

[79] *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

Ms. Romero's third argument is that the ALJ erred in discounting her credibility. The ALJ has the responsibility to evaluate the claimant's credibility and to resolve questions of credibility.[80] Furthermore, the ALJ's credibility evaluations are entitled to considerable deference.[81] In this case, the ALJ properly found Ms. Romero not to be fully credible because her complaints are not mirrored in her medical records or exhibited in her daily activities.

As noted previously, the record does not contain a functional evaluation by either of Ms. Romero's physicians or by a consulting examiner. Therefore, the record lacks any evidence, other than Ms. Romero's own testimony, concerning how the diabetes affects Ms. Romero's ability to function.

Furthermore, any inconsistencies between Ms. Romero's testimony about her limitations and her daily activities are "quite relevant" in evaluating her credibility.[82] Here, the ALJ took into consideration Ms. Romero's complaints concerning her condition in evaluating her residual functional capacity. Ms. Romero testified at the hearing that drives, takes care of her daughter, takes care of all of her daily activities including grooming, shopping, dishes, and laundry; she reads, walks, and

---

[80] *Masterson v. Barnhart*, 309 F.3d at 272.

[81] *McKnight v. Astrue*, 340 Fed. App'x 176, 181 (5th Cir. 2009); *Newton v. Apfel*, 209 F.3d at 459.

[82] *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990).

occasionally goes to church and visits with her mother, who lives next door.[83] It is appropriate for an ALJ to consider the claimant's daily activities when deciding the claimant's disability status.[84]

In summary, there is substantial evidence in the record supporting the ALJ's decision to discount Ms. Romero's credibility. Therefore, this assignment of error lacks merit.

Ms. Romero's final argument is that the ALJ improperly considered the vocational expert's testimony. At the hearing, the vocational expert was asked a hypothetical question concerning taking unscheduled breaks from work of up to thirty minutes at a time on an as-needed basis. The expert stated that taking such breaks would likely preclude employment. But there is no evidence in the record that Ms. Romero's diabetes makes such breaks necessary. She testified that she lays down and tries to sleep after she eats but there is no medical opinion in the record concerning whether the nature or severity of her diabetes makes such breaks necessary or mandatory in the workplace. When hypothetical testimony by a vocational expert is unsupported by the evidence in the record, the ALJ may properly disregard that

---

[83] Rec. Doc. 5-1 at 33-34.

[84] *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995); *Reyes v. Sullivan*, 915 F.2d at 155.

testimony.[85]  In this case, it was appropriate for the ALJ to disregard the vocational expert's testimony on this point.  Therefore, this assignment of error lacks merit.

There is no evidence that the ALJ applied inappropriate legal standards in ruling on this case, and the ALJ's decision is based on substantial evidence in the record.  Ms. Romero failed to prove that she is disabled.  Accordingly, the undersigned recommends that Commissioner's ruling should be affirmed.

### CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Ms. Romero is not disabled is supported by substantial evidence and was reached by application of the proper legal standards.  Accordingly,

**IT IS RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this matter be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

---

[85]     *Owens v. Heckler*, 770 F.2d 1276, 1282 (1985).

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 5th day of May 2014.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE